And we are ready for their argument. Mr. Rhodes, you may begin. Thank you and may it please the court, my name is Dan Rhodes and I represent the appellant L.B. and on her behalf I'm asking this court to reverse the grant of summary judgment. The district court erred in failing to find any genuine dispute as to a material fact and the factual errors in the opinion below led to erroneous legal conclusions affecting L.B.'s under the Missouri Human Rights Act and her negligence claim against school officials. On the MHRA claim, the court erred in holding that the defendants neither knew nor should have known of the ongoing sexual abuse of L.B. and on the negligence claim, the error was in finding discretion within school policies that were supposed to be followed. And briefly, the facts are that L.B. was a 16-year-old female high school student and her 32-year-old adoptive cousin had taken a sexual interest in her. And on three occasions while L.B. was in school, the abuser called the school and asked her to be dismissed early. And on the fourth occasion, he just called the poor school and had her excused for the entire day. And on every single occasion, the school officials released L.B. without identifying the caller or even attempting to. And so these facts on their own might or might not point to school district liability, but the district's own clear policies support both the common flawed negligence claim and the MHRA claim because the district had specific policies in place regarding early dismissals of students and even more specifically regarding telephone requests for early dismissals, which had they been followed would have prevented the abuse in this case. And so the reason that the policy supports the negligence claim is that it establishes a ministerial duty on the part of school officials to perform the acts that are described in the policies. And the reason it affects the MHRA claim is that it goes to the district's knowledge or constructive knowledge that they should have known that this ongoing abuse was occurring. Counsel, can I ask you about the Human Rights Act claim where you started, which is I don't understand how this is discrimination based on sex or gender. The fact of the matter is, is if the early dismissal policy, if this would have been a boy instead of a girl, there's just as much of a likelihood that the boy could have been picked up by a cousin and sexually abused. So I guess I don't understand how sex or gender play into this at all. And maybe you can help me with that. Yes, Judge Strauss, I'd be happy to. So the claim under the MHRA is what I would call a SUBIA claim. It's based on a precedent from the Missouri Court of Appeals called SUBIA versus, DOE-X-REL-SUBIA versus Kansas City, Missouri School District. And a SUBIA claim has five elements, which are laid out, but to cut to the chase, Your Honor, a SUBIA claim does not require discriminatory intent on the part of the school officials in order to impose liability. The elements just include, one of the elements is that the victim is subject to unwanted sexual harassment and that her gender is a contributing factor in the harassment. But the actions don't have to be because of sex or gender. They could just be neutral, completely neutral, and it just so happens that a member of one gender ends up getting harassed and that's enough? No, that's not what I'm saying, Your Honor. The harassment must be motivated by the gender of the victim. So admittedly, the harassment is done in this case, as it was in SUBIA, by someone other than a district employee. And a SUBIA claim allows for that. We have harassment based on gender. And in this case, to make it explicit, she was subject to sexual conduct because of her adopted cousin, twice her age, who wanted to have sex with young girls. And so that satisfies the sexual discrimination portion of it. And then the other elements play out under SUBIA as they're stated. The part of the policy, I want to point out that policy JEDB is the policy at issue here, and it has various portions and different sections. There is a specific portion of it about early dismissals. And part of what I think, where I think the court below erred was in relying on parts of the policy other than the early dismissal part. But the early dismissal part specifically says that any person requesting the release of a student must present proper identification prior to the release of that student. It also says that telephone requests for early dismissal of a student shall be honored only if the caller can be positively identified as the student's parent or guardian. And the third part of the early dismissal policy is that students will only be released to the parent, guardian, or designee of the parent or guardian, or to other individuals or agencies permitted or required by law. And so the legal error in the opinion below as it affects the negligence claim, which is count four of the first amendment complaint, is in finding that school officials were, in the words of the opinion, acting in a discretionary capacity in applying the JCHS release procedures. But does it matter which, what defendant you're referring to? And as I understand it, the only defendant that remains here is the principal, correct? Well, the school district. Well, okay, the individual you're talking about, the implementation of the particular policy and whether it's a discretionary act. Did I misunderstand your argument? No, you didn't judge. And so if you look at what the principal was doing, he, in this case, it was he, right? Principal James had his responsibility. How was that not discretionary in developing these individual policies that then he delegated to other folks to carry out? How is his action not discretionary? So the, he was responsible to make sure that students were not released to telephone callers without the caller being positively identified. It's, there are a couple issues in the question, which we might have to come back to, but in any case, while the principal might've had discretion in developing the policy, as an initial matter, there's a part of the opinion that says he actually did not implement any policies, but the policies as they are stated are mandatory. They are non-negotiable and they establish ministerial duties. And so I don't know that the principal could argue, well, I had discretion to establish some other policy. Once the policies were written and promulgated, there was just no discretion there. If the question is, aren't we, aren't I pursuing the John Doe defendant who was never, you know, who has not been brought into the case? I mean, that's an issue that might have to be passed out on remand because the order denying my motion to add her as a John Doe defendant stated that it could be revisited at a later time. So in order to say that the principal is exercising no discretion, it's a ministerial task, you are, that's sort of a, I don't know, respondeat superior responsibility for the Doe defendant. Is that not right? Well, I would not put it that way, Judge Bailey. I would say that the buck stops with the principal. Now there's also a part of the early dismissal policy that I did not quote, but it's important here. It says students shall not be excused into any person's custody without the direct prior approval and knowledge of the building principal or designee. And so again, you have the district putting a specific ministerial duty on the principal, which was violated in this case. And as to the issue of whether there was a designee, I think that that's, at most there's a material fact either disputed or missing from the record that should include summary judgment here. So on the, I want to dig more into the ministerial duty. There's a case that I cite in my brief called JM versus Lee's Summit, and that involved a case where students were playing softball in PE. There was a district policy that said that when protective equipment is provided, all persons are required to use the equipment as directed. And the PE teacher said that anyone playing catcher must wear a face mask. And then the PE teacher had a volunteer kind of supervise the softball game. The student who was playing catcher, the mask did not fit, and the volunteer said, don't worry about the mask, just stand a few feet farther back. And of course, inevitably, the student got hit in the face with the bat and was injured. And the appellate court of Missouri found no official immunity in that case because the catcher's mask requirement imposed a ministerial duty. And the reason, the important part of that analysis that I want to point out to the court is that that opinion acknowledged that the volunteer supervision of the softball game did involve some discretion. However, it was this catcher's mask requirement that was mandatory and created a ministerial duty. So I think that's analogous to our case because while there might have been discretion in how these policies were written or just general supervision of students, the telephone request for an early dismissal triggered these mandatory policies which gave rise to ministerial duties such that the individual defendants cannot claim official immunity in this case. Counsel, can I ask a question about the exhaustion of administrative remedies? How do you understand the district court's ruling on that, that there was some kind of an exception to this rule? I'm a little puzzled on how that was ultimately resolved and what your position is on that. Thank you, Judge. So there are three different timelines that apply here. The only one that matters is that once the right to sue letter was issued, we had 90 days to bring suit and we met that requirement. There was defendants argued about whether the complaint had been brought within 180 days of complaint of discrimination. Why doesn't that matter? Well, because once the MCHR investigates and takes jurisdiction and issues a right to sue letter, then the precedential case law in Missouri is that the only requirement left once there's a right to sue letter is the 90 day requirement to letter comes that washes away any error that's gone on prior. Yes, under the controlling case law, that's the effect that it has. And so I think that issue was actually fairly non-controversial in the district court. I don't know, Mr. Burroughs might see it differently. Counsel, I want to ask you about one other aspect of the Human Rights Act claim. So we're talking about these, I think, subpoena claims and known or should have known. That's the other one that puzzles me. We talked a little bit about sex and I'm satisfied with your answer on that, but known or should have known. What evidence is there that the principal, the John Doe, whomever, the school district knew or should have known that this high schooler was being let out early and sexually abused by this cousin? Yes, thank you, Judge Chess. I mean, all the district had to do or all the school staff had to do was to apply its policies and require proper identification of the caller and upon doing so, they would have discovered that the caller was an unauthorized individual and they could have put a stop to it right there. There's excerpts from deposition testimony in the joint appendix at 255 to 263 that show that the caller testified in a way that was not rebutted, that he was never asked a question and would not have been able to answer any of the questions that he would have been asked. So between the failure to implement the policies and the testimony on record, the district would have known of the identity of the caller if it had simply implemented its policies, which should have been simple enough. So I would like to reserve the remainder of my time for rebuttal if I may. You may. Thank you. Counsel, we're prepared to hear from you. Thank you, Your Honor. If I may please the court, I'm Ryan Burgos. I represent the school district as well as Principal Robert James in this case. I just kind of want to briefly summarize. The district court was correct in granting summary judgment. There was no evidence in the record that L.B. was treated differently on the basis of her gender and the way she was dismissed from school on each of the four occasions mentioned in the complaint. Additionally, the negligence claim against Robert and Principal James should have been dismissed as a matter of because he was not negligent, and even if he was, this was a discretionary act in his implementing of policies for his particular building, and he is therefore entitled to official immunity. I want to touch briefly on the official immunity issue. There's a case that came out of the Missouri Supreme Court after briefing was concluded in this matter. That's State Ex Rel. Alsup v. Knazar. I hope I'm saying that right. The site is 588 Southwest 3rd 187. That was decided in December of 2019. It's an official immunity case. It's a school district case, and in that case, a school official was entitled to official immunity. He physically restrained the student, ended up breaking the student's arm. I'll just refer to the opinion, but basically the Supreme Court said the use of force, what force was used, and the degree of that force was all discretionary on the part of the school official in that matter, but I cite that case for the lengthy discussion of official immunity very recently by Missouri Supreme Court. I'd like next to briefly address the exhaustion issue that Your Honors addressed with Mr. Rhodes a little bit. I believe Mr. Rhodes misspoke about the current state of Missouri law, however. The Tybill Plaza case that was cited in our brief sets forth the standard on exhaustion. In this case, there's no dispute the charge was not filed within 180 days. He missed it by one day. Under Tybill Plaza, there is no jurisdiction over the claim. The fact that the right to sue letter was issued by the MCHR is irrelevant because, as Tybill Plaza sets forth, the MCHR has to issue that on request. They don't have discretion not to, and if you look at the actual right to sue letter, it even says there are no determinations of jurisdiction being made by the MCHR when it issued that letter, and Mr. Rhodes mentioned in his brief that we didn't appeal that issue. As this court knows, this is the de novo review, so that's why we're raising exhaustion at this point because I do not believe you even need to address the merits of the MHRA claim because it was untimely filed. In your view, what was the district court's reasoning for concluding that it had been exhausted? I was a little puzzled, frankly, by the opinion. I wondered maybe a paragraph didn't get taken out because at one point there's a paragraph which says he did not exhaust by filing within 180 days. Then it goes to discuss the fact that the right to sue letter was issued and that the lawsuit was filed within 90 days. I don't dispute that it was filed within 90 days, but that's not relevant for the exhaustion argument. I would have to say my view is the court improperly relied on Farrow and not Tybill Plaza. Respectfully, Tybill Plaza is the case that the district court should have relied on to determine that there was no jurisdiction over the claim because the right to sue letter was untimely filed. As to the merits of the MHRA claim, I touched on this a little bit. As the district court pointed out, there is no evidence L.B. was treated any differently in being dismissed due to her gender. In fact, she testified all students at the high school were dismissed the same way. Her mom testified her and her brother were dismissed the same way from the high school. There's just nothing in the record that her gender played any role in her dismissal at all, so it doesn't state a claim under a claim to discrimination statute. Now opposing counsel say that doesn't matter because the harassment itself was because of gender. I think this would be a case, as I recall, one of the other cases involves harassment in a bathroom by another student or something of that nature, and so it doesn't matter whether or not the school treated the student differently on the basis of sex. It mattered if harassment was on the basis of sex. What's your response to that? I don't quite agree with that because Sabia is limited to student-on-student harassment, and there's also a case out of the Western District of Missouri, a published case, where the harassment was committed off-site but by a school employee. In this case, we have no dispute that nothing occurred on school property. Nothing occurred involving a school employee. There was no harassment by anyone connected with the district or district property. I think there's an overbroad reading of the Sabia case as well as the Martin case, and I think what's relevant is how L.B. was treated by the district, and she was not treated any differently than any male student would have been, so therefore there was no harassment or any kind of activity based on her gender. I do not believe that Sabia applies to this case. If you look at the site on page 54, it's limited to student-on-student sexual harassment, which is no dispute. That's not what this case is. Well, let me ask you this. Would a better way of going about this in light of your argument be that there was no harassment in the little bit with Sabia? I would agree with that. There's no harassment in the building or harassment by a school official that anyone at the school had any control over. In the Martin case that's cited in L.B.'s brief, the activity occurred off-site, but there were allegations that there had been some grooming and stuff like that on school property. We don't have that in this case. There is nothing that occurred any harassment of any kind, as you pointed out, on school property here, so I think that is the distinction between this case, the Sabia case, and the Martin case. I would also add Sabia and Martin were both motions to dismiss, so they have to accept everything is true. Here we have a complete record of there being no dispute that no one in the district was involved in any harassment towards L.B. of any kind. It was all this adoptive third cousin, I'm sorry, second cousin, of school property. Regarding the MHRA claim in Appalachian against Principal James, there's no evidence that he was personally involved in any dismissals, yet any interaction with L.B. at all. He cited this in our brief. Missouri case law requires personal involvement of some kind, and that simply is not the case here with Mr. James, so summary judgment is appropriate as to him specifically on the MHRA claim as well. What was the argument with regard to both him and John Doe, that the school district should have known, because had they applied their policy, they would have known based on the facts of this case, and they would have never released the student into the arms of the second cousin. I don't agree with that, Your Honor, because the policy for this particular building, again, this is a high school building, 10th, the policy was parents would call in to excuse their student over the phone. The student knows if they're being excused or not for a valid reason. L.B. knew that this individual was not who he said he was, and she said nothing to the district about that. Now, had she said something to the district, then obviously they knew or should have known at that point. I don't dispute that, but there's nothing in the record as to how the district knew or should have known about this when L.B. herself, who, let's not forget, is 16, and knew that this individual was not somebody she could be excused to and did it anyway without alerting them. There's no way they could have known. It is a little different situation. I mean, there's preschool buildings in the district. In that situation, it's obviously different than high school, but that's why the high school has, that's why the principal of high school uses discretion to implement a slightly different policy to allow students to be excused over the parent doesn't want to have to go to school in person, submit paperwork, and then have that person leave in the car anyway. If they can call out, then that person, then the student can just leave to go to an appointment or whatever they needed to be excused for. So there is no evidence in the record that the district knew or should have known. I'd like to briefly touch on the negligence claim. I know Mr. Rhodes has kind of discussed this with you all as well. Count three alleges that Mr. James never did not establish a procedure to validate requests for early dismissals for students. The record shows that all he was required to do was implement a policy, and he did implement a policy. Once he has the discretion to implement one particular policy to implement his particular building, it's discretionary at that point, and the district court correctly found that he was entitled to official immunity. And again, if you look at the greater detail and probably more articulately than I do. But would you agree that it is more ministerial when you get to, and I understand John Doe is not in this case, but that type of implementation is more ministerial than the discretionary act of developing that policy with the ministerial tasks? If there were a negligence claim, and L.B. was in this, I'm going to was in this lawsuit. I think it gets to be a closer case as to whether or not it's discretionary, depending on what the particular policy is in that particular building. Yes, I would agree that it could be the case. Again, the record doesn't quite go into that detail, but I think I would have to concede that there are some circumstances that could shift it possibly into the ministerial realm, depending on what exactly the evidence was. As far as the negligence counts against Principal James in the lawsuit, count four alleged he was negligent in the release of students. There is no evidence Mr. James was involved in the particular dismissals of L.B. issue in this case. And so therefore, the district court properly granted summary judgment on that claim. And then count five alleged negligent supervision, which again, Mr. James was not involved in the actual dismissal of L.B., so the court properly granted summary judgment on those So he would be titled to official immunity. I see I still have a little bit of time. I'll just briefly address count six. L.B. did not address that in her brief. To the extent the court has any questions about that, I would say the summary judgment was appropriately granted. The count six was 1983 claims against Principal James and the district. The claim against Principal James was solely based on responding to Superior Oral, which as this court is well aware, does not state a claim under 1983. And likewise, there was no evidence in the record to support a Monell claim against the district. So the district court properly granted summary judgment on that claim as well. The court doesn't have any other questions. Again, if you would, sir, who did make the decision to release this person from school? I don't want to misquote the record. I believe there was a school secretary that logged out, I'm sorry, reported in the system that L.B. was logged out for the day, but there is no way to determine who took the actual call on each date in question because there's no call logs. There's no record of incoming calls. There's nothing like that. I do believe the abuser testified. He spoke with a woman on all four occasions, but I believe that's all that's really in the record as to who took the calls. Typical case of bureaucratic inertia? Well, I shouldn't say that. I disagree with Malfeasance. Non-responsibility or immunity, I guess. I would say there's not a way to go back and look at who took those calls on the four dates in question. Maybe. It doesn't make any difference. Well, if there are no further questions and if you're concluded with your argument, we thank you for your argument here this afternoon. Thank you. Mr. Rhodes, I believe you have a bit of rebuttal. Yes, thank you. I think the District Court did get the exhaustion issue right, and though it cited the Hill case, it's really the Farrell v. St. Francis Medical Center case that says that really the only two requirements once a right to sue letter is issued are 90 days after the letter is issued and two years after the harassment, and the District Court opinion recognizes that both of those timelines were met here. With respect to the policies, the common sense will tell us the reason that policy was created was to prevent a student who might have at 16 years old think she can make that decision from making that bad decision. I mean, that is what that policy is for. The harm that policy is designed to prevent is exactly the harm that occurred here, and that policy was specific enough to create ministerial duties under Missouri law, and so at a minimum, there is a genuine dispute as to the material facts regarding the amount of discretion in the policies or the should have known requirement under subia, and for those reasons, I'm asking this court to reverse the judgment below. Thank you, and again, thank you to both counsel. We appreciate your willingness to appear by video here for your argument. We will take the matter under advisement. Thank you, Judge Kelly. At this time, Ms. Clark, the court will take about a